25,  189
30,   15

[Argued December 5, 1893; decided January 8, 1894.]

# DAVIS *v.* BOWMAN.

[S. C. 35 Pac. 264.]

PRIORITIES BETWEEN CHATTEL MORTGAGES.[1]— Where chattel mortgages are made in good faith and for a valuable consideration, and possession is not delivered, their priority is determined by the time of their execution, and not by the time of their filing, since by subdivision 40 of section 776, Hill's Code, there is only a rebuttable presumption of fraud against an unrecorded mortgage, which does not exist when the mortgage is either admitted or proven to be *bona fide*. *Pittock* v. *Jordan*, 19 Or. 8, overruled; *Marks* v. *Miller*, 21 Or. 317, approved and followed.

APPEAL from Multnomah: E. D. SHATTUCK, Judge.

The plaintiff, H. E. Davis, brought an action against the defendant, E. H. Bowman, for the sum of three thousand dollars, with interest thereon at the rate of ten per cent per annum from the twenty-sixth day of January, eighteen hundred and ninety-two, as damages sustained by the defendant's wrongful conversion to his own use and benefit of certain musical goods and instruments, known as the stock of the Durand Organ & Piano Company, upon which the plaintiff held a chattel mortgage executed by the said company, on the said twenty-sixth day of January, eighteen hundred and ninety-two. This mortgage was made to secure the payment of the company's note to the plaintiff, executed the same day, for the sum of three thousand dollars, with interest thereon at the rate of ten per cent per annum, payable upon demand, and was duly filed for record with the recorder of conveyances of Multnomah County, Oregon,

---

[1]NOTE.— The circumstances that determine this case occurred in January, eighteen hundred and ninety-two, before the passage of the act of eighteen hundred and ninety-three ( Laws, 1893, p. 30 ), and the case is decided under the old law. The same is also true of *Marks* v. *Miller*, 21 Or. 317; *Meier* v. *Hess*, 23 Or. 599, and *Marquam* v. *Sengfelder*, 24 Or. 2.—REPORTER.

on the day following its execution. The defendant admits the taking and appropriating of the said mortgaged goods to his own use and benefit on the twenty-ninth day of January, eighteen hundred and ninety-two, but denies that he did so wrongfully. He bases his right to so take and appropriate the said mortgaged goods upon four chattel mortgages thereon, executed to him by the said Durand Organ & Piano Company, to secure the payment of the sum of eighteen thousand nine hundred and thirty-eight dollars and seventy-five cents, and interest. Two of the said mortgages were executed and delivered to him on the ninth day of January, eighteen hundred and ninety-two, and were two days thereafter duly filed in Multnomah County, Oregon; and the other two were executed and delivered on the twenty-sixth day of January, eighteen hundred and ninety-two, and were filed for record on the following day. Among the articles so taken and appropriated by the defendant were twenty-six Durand organs of the value of eleven hundred dollars, which organs were not included in defendant's two mortgages of January ninth, eighteen hundred and ninety-two, but were described in his two mortgages of January twenty-sixth, and were also included in the plaintiff's mortgage of the same date, which was filed the following day.

After issues were joined, the case was referred to Richard H. Thornton, Esq., to take the evidence and report the facts and law therein. The referee, in his report, made eighteen findings of fact, and ten conclusions of law; and thereupon advised that judgment be given for the defendant. The plaintiff duly excepted to a portion of the report as made and filed by said referee, and moved that the same be set aside, and for judgment, alleging as reasons therefor that the findings and conclusions so excepted to are not supported by the evidence,

and are contrary to the law. The defendant filed his motion asking the court to affirm the report as made and filed by the referee, and for judgment thereon. Upon the hearing of the motions for and against the confirmation of the referee's report, the court modified certain findings of fact and law therein, and gave judgment for the plaintiff for the amount agreed upon by the parties to be the value of those instruments in defendant's mortgage of January twenty-sixth, eighteen hundred and ninety-two, which were not included in his mortgage of January ninth, eighteen hundred and ninety-two, to wit: eleven hundred dollars.

The modification by the court of one of the referee's findings does not materially affect the case, but, as it is necessary to a proper understanding of the issues herein, it is copied as modified, viz.: "That on the twenty-seventh day of January, eighteen hundred and ninety-two, before the hour of eight A. M., the plaintiff and defendant, by their several agents, were present at the office of the recorder of conveyances for Multnomah County, and there presented for record the three mortgages executed as aforesaid on the previous day to plaintiff and defendant, and more particularly described in findings of fact number nine. The plaintiff's mortgage was presented to and received by the recording officer for filing one or two minutes before the defendant's mortgages were so presented and received. The presenting and receiving of the mortgages for recording was completed before eight o'clock A. M. of the said day, the hour at which the recorder is required by law to open his office." Among other conclusions of law, the referee found: "That the plaintiff's mortgage of January twenty-sixth, eighteen hundred and ninety-two, and the defendant's two mortgages of the same date, were, in contemplation of law, filed simultaneously, namely, on the twenty-seventh day

of January, eighteen hundred and ninety-two"; that "where two chattel mortgages are filed simultaneously, the time of their execution must determine their priority"; and that as the defendant's "mortgages were all executed before that of plaintiff, he cannot be charged with a wrongful taking and conversion of any goods which are included in the mortgages of both parties." Hence, while the referee found that "in case of conflicting claims between mortgagees of chattels, he has the priority whose mortgage is first duly filed," as held in *Pittock* v. *Jordan*, 19 Or. 8, 13 Pac. 510, he considered the rule as there declared inapplicable to the case at bar, inasmuch as there was no priority in the filing of the mortgages. As a consequence of this view, the referee found that the defendant "did not wrongfully take or convert to his own use and benefit any of the chattels mentioned in the complaint." After the hearing upon the motion to set aside and confirm the report of the referee, the court re-referred the case for the purpose of obtaining a finding as to whether or not the plaintiff had notice, actual or constructive, of the existence of the mortgages of the defendant which were executed on the twenty-sixth day of January, eighteen hundred and ninety-two. The referee reported, as an additional finding of fact, that "the plaintiff had no actual or constructive notice of the actual existence of the two mortgages last named, or either of them, at the time of the execution of his mortgage." In view of this finding, taken in connection with the finding of fact as modified and above stated, the court found the law to be that "the time of the filing of said mortgages should date and be of the actual time at which they were received for recording by the recorder at his office, and should be filed as of that time," in lieu of the referee's finding that such mortgages in legal contemplation were filed simultane-

ously.   Hence the court held that the plaintiff's mort-
gage was filed before the defendant's two mortgages, and,
within the rule laid down in *Pittock* v. *Jordan*, that it
was entitled to priority over them without reference to
the time of their execution.   The court thereupon found
that the defendant "did wrongfully take and convert to
his own use and benefit the chattels mentioned in the
complaint," and adjudged that the plaintiff recover as
their value the sum specified as aforesaid.

REVERSED.

*Messrs. Emmett B. Williams* and *William W. Thayer*
(*Messrs. Richard Williams* and *Chas. H. Carey* on the brief),
for Appellant.

*Mr. Rufus Mallory* ( *Messrs. Cyrus A. Dolph* and *Joseph
Simon* on the brief), for Respondent.

Opinion by MR. CHIEF JUSTICE LORD.

Our inquiry in this case is whether, upon the facts as
disclosed, the time of filing, or the time of executing,
such mortgages should determine their priority.   The
solution of this inquiry depends upon our statutes.   Prior
to eighteen hundred and sixty-two our statute, like those
of several other states, declared, in substance, that every
mortgage of chattels thereafter made should be abso-
lutely void, except as to the parties, unless the possession
of the thing mortgaged be delivered to and be retained
by the mortgagee, or unless the mortgage be filed as
prescribed:   Statutes, 1855, § 18, p. 528.   In the revision
of the statute for the purpose of framing a code of civil
procedure, this section was repealed:   Statutes of Oregon,
p. 126.   When the mortgages in question were executed
and filed our statute provided that "It shall be the duty
of the county clerk, upon the presentation for that pur-

pose of any mortgage or conveyance intended to operate as a mortgage of goods and chattels, or a copy of any such instrument, and the payment of his fees, to endorse thereon the time of receiving the same, and to deposit such instrument or copy in his office, to be kept for the inspection of all persons interested": Hill's Code, § 3054. After such mortgage has been filed, the statute also provides that it "shall cease to be valid as against the creditors of the person making the same, or subsequent purchasers or mortgagors in good faith, after the expiration of one year from the filing of the same, or a copy thereof, unless within thirty days next preceding the expiration of the year the mortgagee, his agent or attorney, shall make and annex to the instrument, or copy, on file as aforesaid, an affidavit setting forth the interest which the mortgagee has, by virtue of such mortgage, in the property therein mentioned, upon which affidavit the clerk shall indorse the time when the same was filed": Hill's Code, § 3056.

So far as these provisions are concerned, there is nothing in them to indicate that filing or failing to file a chattel mortgage, where there is no change of possession of the property mortgaged, raises or removes any presumption of fraud, disputable or conclusive, which affects the validity of such mortgage as against creditors, subsequent purchasers, or mortgagees in good faith. But subdivision 40 of section 766 provides that "every sale of personal property, capable of immediate delivery to the purchaser, and every assignment of such property, by way of mortgage or security, or upon any condition whatever, unless the same be accompanied by an immediate delivery, and be followed by an actual and continued change of possession, creates a presumption of fraud as against the creditors of the seller or assignor, during his possession, or as against subsequent purchasers in good faith and for

a valuable consideration, disputable only by making it appear on the part of the person claiming under such sale or assignment, that the same was made in good faith, for a sufficient consideration, and without intent to defraud such creditors or purchasers; but the presumption herein specified does not exist in the case of a mortgage duly filed or recorded as provided by law." As the sections which we have cited are *in pari materia* they must be construed together. The "mortgage duly filed or recorded as provided by law" in the last clause of subdivision 40, section 766, necessarily refers to section 3054, as there is no other section which provides for the filing of mortgages of personal property; and, as this section is silent regarding the effect of filing, or neglecting to file, a chattel mortgage, where the mortgagor retains possession, we must turn to said subdivision 40, to ascertain the nature of the legal consequences which result in such cases. Under this subdivision, a mortgage of personal property, unaccompanied by delivery and possession of the chattels mortgaged, raises a presumption of fraud, disputable but not conclusive, which may be overcome by showing that such mortgage was made in good faith and for a valuable consideration. Under the circumstances stated, the mortgage is valid as against third parties, when the *bona fides* of the transaction is made to appear. But the latter clause of the subdivision is to the effect that the fraud implied from the possession of the mortgagor does not exist when the mortgage is filed as provided by section 3054; the filing of the mortgage takes the place of the change of possession, or obviates its necessity. Such filing, like the transfer of the possession to the mortgagee, gives notice to third parties of his interest in the mortgaged property. It stands for a change of possession, and thus removes the presumption of fraud which would otherwise exist. By this means, a mortgagor is

enabled to pledge his chattels as security, and retain the possession and use of them in a reasonable way, while the mortgagee is relieved from the burden of proving the *bona fides* of the transaction. The filing being a substitute for the mortgagee's possession, its object is to give notice to third parties, and to show the transaction to have been *bona fide*, and thus remove the presumption of fraud which would otherwise arise against it. As a consequence, if a mortgage of personal property is filed, although the mortgagor retains possession, the presumption of fraud does not exist; but if the mortgage has not been filed, a presumption of fraud arises, as against creditors and subsequent purchasers, which may be rebutted by making it appear that such mortgage was made in good faith. "The presumption raised by this subdivision," BOISE, J., said, "is as to unrecorded mortgages": *Orton* v. *Orton*, 7 Or. 482, 33 Am. Rep. 717. As to such mortgages, — not recorded or filed, — there is a presumption of fraud which, unexplained, renders them invalid, but which when explained, removes such presumption and leaves them intact and valid. Hence, a mortgage of chattels, unaccompanied by delivery and possession, although not filed, if made in good faith and for a valuable consideration, is not invalid as against creditors and subsequent purchasers.

The mortgage of the plaintiff was executed subsequent to, but on the same day as, the two mortgages of the defendant, but before they were filed. As the plaintiff had no actual notice of the existence of such mortgages, and the property remained in the possession of the mortgagor, in the absence of explanation, they were presumptively invalid as against the plaintiff. But if the defendant had succeeded in filing his mortgages before the execution of the plaintiff's mortgage, no such presumption would have arisen affecting their validity. The

filing of the defendant's mortgages, after the plaintiff filed his, did not relieve them of the presumption of fraud which impugned their *bona fides*. Nor did the filing of the plaintiff's mortgage in any way affect their legal status in this regard. It was not the filing of the plaintiff's mortgage, but the failure of the defendant to file his before the execution of the plaintiff's mortgage, that fixed their status as presumptively fraudulent. The plaintiff filed his mortgage to protect it from the implication of fraud as against subsequent, and not prior, mortgages; hence his mortgage obtained no priority over the defendant's mortgages on account of being first filed. If the defendant should show, or it should be admitted, that his mortgages are *bona fide*, they are valid instruments, and as such created liens on the property in question from the date of their execution, which, being prior to the execution of the plaintiff's mortgage, gives them priority. The case is different where the statute declares in effect that no chattel mortgage shall be valid, except as to the parties, unless possession be delivered to and retained by the mortgagee, or unless the mortgage be filed or recorded as prescribed. Under this kind of statute, an unrecorded chattel mortgage, or one not filed, is absolutely void as against a subsequent mortgagee. "The statute," said MARSTON, J., "declares the instrument shall be absolutely void, and nothing short of a change of possession, or filing as the section requires, can save it": *Cooper* v. *Brock*, 41 Mich. 491, 2 N. W. 660. In other words, the statute declares that a prior unrecorded mortgage "shall be absolutely void as against" subsequent mortgages in good faith: *DeCourcey* v. *Collins*, 21 N. J. Eq. 360. If our statute was of this sort, the mortgages of the defendant, not having been filed when the mortgage of the plaintiff was executed, could not have priority, because they would be entirely void as against it. Such

is not the legal consequence that follows want of possession or filing under our statute. Under it a chattel mortgage not filed, where the possession is retained by the mortgagor, in the absence of explanation showing the transaction to be fair and honest, would be considered fraudulent as against subsequent mortgagees. On the other hand, if such mortgage is shown, or admitted, to be founded on a valuable consideration, and made in good faith, it must be considered a valid instrument as against creditors, subsequent purchasers, or mortgagees.

Under the circumstances first stated, the mortgage of the plaintiff would be entitled to priority over the mortgages of the defendant, not because it was first filed, but because those of the defendant were not filed when his was executed, and therefore were to be regarded as presumptively fraudulent against it; while under those last stated, the mortgages of the defendant would be entitled to priority over that of the plaintiff, because, being valid instruments, they impressed a lien on the property from the date of their execution, which, being prior to the execution of the plaintiff's mortgage, conferred priority of right. As the case was brought and tried upon the theory that the priority of the mortgages in question was to be determined from the time of the filing, without regard to the time of their execution, the facts found, and the argument conceded, that the defendant's mortgages were *bona fide*, or valid instruments. Considered as such, the defendant acquired a lien on the property by his mortgages, which was prior to that acquired by the plaintiff's mortgage, and consequently he had a right to take the property covered by them, and, in so doing, did "not wrongfully take or convert to his own use the chattels mentioned in the complaint." In view of these considerations, the case of *Pittock* v. *Jordan*, 19 Or. 8, 13 Pac. 510, which holds that a chattel mortgage given

in good faith is not valid as against a subsequent mortgage first filed, must be overruled. At common law the rule unquestionably was that where there was no change in the possession such transaction was void as to creditors. The rule of *Twyne's Case* and the other English cases following it, was that the retention of possession by the vendor or mortgagor rendered the transaction, as a matter of law, absolutely void; while in this country the courts are divided, some holding strictly to the English doctrine, and others holding such a transaction only presumptively fraudulent, subject to explanation, which should be considered by a jury with the other evidence in determining whether the title of the vendee or mortgagee was in fact affected by fraud: 2 Kent's Com. 516–531; *Marks* v. *Miller*, 21 Or. 317, 14 L. R. A. 190, 28 Pac. 17. The doctrine of our statute is founded on the principle of these latter decisions. As the case stands, in view of the considerations suggested, the judgment must be reversed, and the cause remanded for such further proceedings as may be proper and not inconsistent with this opinion.                                    REVERSED.