## Amos Bradshaw et al. v. Thomas McLoughlin.

*Pleadings—Sales—Consideration—Waiver.*

A justice's return set forth that "the plaintiff declared ver. lly against said defendants on common counts in assumpsit, and also on breach of a written contract, now on file in court, in all for $300 or under." *Held* a sufficient declaration to warrant the admission of the contract in evidence.

Parties made an agreement for the sale of the "stock" of one of them to satisfy a debt. In a suit involving the agreement, evidence was given of the sale of a certain horse under it. *Held* that the question "What other property was sold?" was admissible, for it was proper to show the sale of other property that would be included as part of his stock; also that as the notice of sale agreed to by all parties included vehicles, hay, etc., it amounted to a practical contemporaneous construction, and that the evidence therefore could not be limited to live stock.

One who entered into an agreement for the sale of property on which he had a lien for the payment of a debt, is not relieved from liability under the agreement by the failure of bidders to comply with the terms of the sale. If bidders were responsible they should be made to pay, and if not, the property should have been immediately put up again to be resold to a responsible bidder, or retained until a different arrangement could be made.

Where a debtor and one who holds a mortgage on his property agree with a subsequent mortgagee that it should be put up at auction to satisfy the latter's claim, there is sufficient consideration to support the agreement in the necessary waiver of mortgage security.

Error to Lapeer. Submitted Oct. 17. Decided Oct. 29.

Assumpsit. Defendants bring error.

*Geer & Williams* for plaintiffs in error.

*W. W. & M. N. Stickney* for defendant in error.

Marston, J. This action was commenced in justice's court. The first error assigned relates to the sufficiency of the declaration. The justice in his return set forth

that "the plaintiff declared verbally against said defendants on common counts in assumpsit, and also on a breach of a written contract, now on file in court, in all for three hundred dollars or under." The defendants pleaded the general issue.

We are of opinion that under the liberal rules of pleading applicable to, and which have long been practiced in justice's courts, the declaration was sufficient, and that the contract referred to was admissible in evidence thereunder.

It is next claimed that upon the trial in the circuit upon appeal the court erred in admitting evidence as to the property sold. This question grows out of the written agreement entered into between defendants as parties of the first part and plaintiff as party of the second part, on the 11th day of October, 1875, and upon which this action was brought.

It appeared upon the trial that in 1875 McLoughlin, at William P. Thrasher's request, endorsed a note for him, running to one Daniel West. This note was afterwards taken up and a new note given, signed by McLoughlin and Schuyler Williams. This second note was not signed by Thrasher, but a mortgage was given by him to these parties, upon a certain horse, to secure them, and it also appeared that Amos Bradshaw had a prior mortgage, to secure the payment of about $200 on this same horse.

Afterwards there was some talk between these parties about getting the amount which was owing them: the result was that plaintiff and defendants met, had the agreement of October 11th drafted, and signed the same.

It was therein agreed that Thrasher and Bradshaw should make an auction sale of Thrasher's "stock." The sale was to be made on October 29th: $200 of the proceeds of the sale were to be deducted and retained (this being the amount of Bradshaw's mortgage on the horse) by the first parties, and the balance of the proceeds they were to turn over to the party of the second

part, McLoughlin, and if after deducting the said sum of $200 there should not be enough left to pay McLoughlin the sum of $225, then the first parties agreed to assign to McLoughlin enough of certain accounts to satisfy the deficiency.

In support of the error alleged, it is argued that under this contract only live stock could be sold; that hay is not stock and could not have been sold and was not included under the term "stock."

This word "stock" was somewhat uncertain and we are not prepared to say that it could only refer to and legally include the live stock of Thrasher. At all events the question asked the witness Best, after he had testified that the horse British Warrior was sold—"What other property was sold?"—was proper. The agreement did not confine the sale to be made to this horse, and under any view it would have been proper to show that other property, which would be included as a part of Thrasher's stock, was sold. It also appeared that the notice of sale, which was drawn up and agreed to by all the parties at the time the contract was drawn and executed, and which was published by their authority, specifically described the property that was to be sold. This notice included the horse referred to, two lumber wagons, one pair road sleighs, certain cows, horses, buggies, hay and other articles. This was a practical contemporaneous construction of what was understood by the term "stock," made by the parties interested, and clearly showed that it was not, as the term itself necessarily could not, be confined to live stock alone. The evidence was therefore properly admitted.

It is next claimed that the court erred in not giving defendants' first request to charge. This request proceeded upon the theory that if there was an attempted *bona fide* sale of the property, which failed because the parties to whom the property was struck off refused to pay for the property according to the terms of the sale, the defendant Bradshaw would not be liable if he acted

in good faith. This request was properly refused. The court charged the jury as to the duty of these parties in case the persons bidding off the property did not comply with the terms of the sale. If the parties were responsible, the sale would be valid and binding and the amount of their bid could be collected. If not responsible, then it was Bradshaw's duty to put this property up immediately at this sale, and have it resold, and to keep the sale open until a responsible bidder could be found. If none could be found, then to retain the property unless a different arrangement was made.

It is next claimed that there was no consideration to support the contract of October 11th. This position clearly is without support. The plaintiff had a mortgage upon certain property as security, and Bradshaw had a prior mortgage upon the same property. Thrasher was the debtor and mortgagor and owner of the property subject to these incumbrances. For the purpose of paying the indebtedness all parties met and mutually agreed that this and other property should be put up at public auction and the proceeds be applied in a certain way to the payment of these claims. For the purpose of this sale the mortgage security upon this property would be waived: the purchaser would take a good title free from the mortgage claims.

The plaintiff thereby released his mortgage security and thenceforth looked to the contract of Oct. 11th in lieu thereof. This being so, the parties could not afterwards insist that there was no sufficient consideration to support their promise to pay. To permit them so to do would certainly work an injury to the plaintiff which would be a sufficient consideration for their promise. Other views might be taken, but the above is sufficient.

It is also urged that the court erred in charging the jury as to the amount of the plaintiff's claim, upon the assumption that they found the horse which had been mortgaged to be of a certain value. There were certainly some very singular things in connection with that

sale. The bids each and all failed, some for one reason and some for another. The horse that had been mortgaged went into the possession of the Bradshaws and they kept him for upwards of a year thereafter. For the court under all the circumstances of the case to instruct the jury that if the horse was only worth $200, and Bradshaw had a right to sell him at private sale, then the plaintiff's claim would be only $96.25, was as favorable as defendants could claim. The plaintiff's right to recover did not depend upon the mere value of this horse, viewed in the light that Bradshaw had a prior mortgage on him, as was supposed. He did not recover on his mortgage, but on the agreement of Oct. 11th, and he was not so limited under that agreement.

There was some farther criticism of the charge of the court, but we do not see that the defendants were in any way injured by what was said. The remarks made by the court, as to the quantity and value of the hay, was only a statement to the jury of his understanding of the evidence, but the court did not thereby take or assume to take from or interfere with the right of the jury to find the facts.

As we discover no error, the judgment must be affirmed with costs.

The other Justices concurred.