THOMAS J. RAMSDELL, TRUSTEE, V. THE CITIZENS' ELEC-
TRIC LIGHT & POWER COMPANY. CORNELIUS
A. WAAL, SHERIFF, V. WALTER R.
FABEN, RECEIVER.

*Chattel mortgage—Record—Notice—Description of property—Mar-
shaling securities—Statute of frauds—Promise to
pay the debt of another.*

1. The record in the office of the register of deeds of a mortgage
   of land is not constructive notice to the world of the mort-
   gage of chattels included in the same instrument.
2. Such a mortgage is void as to said chattels, as against the claim
   of execution creditors of the mortgagor who had no knowledge
   of its existence at the time the credit to the mortgagor was
   given.[1]
3. An electric light and power company mortgaged certain of its
   real estate, together with all buildings, constructions, and im-
   provements upon said premises or elsewhere situated, belong-
   ing to said company, and all dynamos, engines, boilers, pumps,
   wells, machinery, tools, instruments, *apparatus,* and lines of
   poles, and its business of producing, renting, selling, distribut-
   ing, and using electricity. And it is held that the term " ap-
   paratus " is broad enough to include carbon lamps, stored in
   the buildings of the mortgagor, and not in use.
4. The verbal promise of the president of a corporation, that if a
   lumber company which had been furnishing the corporation with
   slabs for fuel would continue to deliver the slabs he would see
   that they were paid for, is void under the statute of frauds,
   and imposes *no duty* upon the lumber company, as between
   the corporation and its bondholders, to attempt first to collect
   of said president its claim for slabs afterwards furnished.

Appeal from Manistee.   (McMahon, J.)   Argued October
26, 1894.   Decided December 18, 1894.

[1] For cases bearing upon the construction of How. Stat. § 6193,
which provides for the filing of chattel mortgages, see *Watson v.
Mead,* 98 Mich. 331, and note; *Williams v. Hyde,* Id. 152; *Damm
v. Mason,* Id. 237, and note.

Petition to compel the receiver of the Citizens' Electric Light & Power Company to turn over to the sheriff certain property claimed by virtue of an attachment levy. The receiver appeals from an order granting the relief prayed. Affirmed. The facts are stated in the opinion.

*George L. Hilliker,* for appellant.

*Smurthwaite & Fowler,* for petitioner.

HOOKER, J.   The Citizens' Electric Light & Power Company of Manistee executed a deed of trust to a trustee to secure an issue of bonds.   The mortgage recited the issue and form of the bonds, which bonds stated that "payment of which is secured by a deed of trust of even date herewith, covering all of the property, real and personal, with its appurtenances and the franchises and rights of the said Citizens' Electric Light & Power Company, as the same is more particularly described and specified in said deed of trust."   The description of property mortgaged by said deed of trust was as follows:   After describing certain real estate, it continued:

"Together with all buildings, constructions, and improvements upon the said premises or elsewhere situated, belonging to said company, and all dynamos, engines, boilers, pumps, wells, machinery, tools, instruments, apparatus, and lines of poles, the business of producing, renting, selling, distributing, and using electricity, whether now belonging to or hereafter acquired by the said Citizens' Company."

This instrument was dated February 1, 1892, acknowledged May 5, 1892.   It was recorded on April 4, 1893, in the office of the register of deeds, and was never filed with the city clerk.   During the period intervening between May 3, 1892, and September 13, 1893, the Buckley & Douglas Lumber Company furnished the electric company slabs for fuel. Payments were made from time to time, and monthly statements of balances were furnished by the lumber company

to the electric company.  On September 13, 1893, the balance due was $588.  Of this sum $576 was furnished after May 9, 1893, and $48 on May 2, 1893.  On May 1, 1893, the balance was $468, and $600 was paid during the time mentioned.  On April 1, 1893, $476 was the balance, and $200 was paid during that month.  On September 15, 1893, one Faben was in possession of the property of the electric company.  From his testimony it would appear that he was managing its business, though the appellant's brief asserts that he was holding possession for the trustee. However this may have been, on the day mentioned the Buckley & Douglas Lumber Company commenced an action for its claim, and caused an attachment to be levied upon 9 double and 26 single carbon lamps.[1]  The sheriff arranged to leave these in the custody of Faben.  The next day Faben was appointed receiver, and the property of the company has since been held by him in that capacity. This was in a proceeding to foreclose the trust deed.  The bill was verified September 14, and is said to have been filed on the same day.  The attachment suit went to judgment and execution.  On November 20, 1893, the sheriff, having in his hands the execution, filed a petition in the foreclosure case, reciting the facts stated, and the refusal of Faben to deliver to him the attached property, which he then claimed to hold as receiver, and asking that Faben be required to deliver the property to be levied upon, or that he pay the amount of the execution.  Upon the hearing of this petition proofs were taken in open court, and the circuit judge made an order granting the relief prayed for, from which order the receiver appealed.

Counsel for the petitioner contend:

1. That the lamps were not covered by the mortgage.
2. That, if they were, they were chattels, and the mort-

---

[1] The lamps were stored in defendant's buildings, and not in use.

gage to that extent a chattel mortgage, and that, not being filed with the city clerk, it was void as to the execution creditor, whose claim arose after the execution of the mortgage.

These claims are contested by the appellant, and he asserts further that the execution creditor should be required to collect its debt from one Hart. This contention calls for a further statement of fact. The evidence shows that in the spring of 1893 the Buckley & Douglas Lumber Company declined to extend further credit to the electric company without Mr. Hart, its president, " would see that they would get their pay, or become responsible; that, in order to keep the institution running, Mr. Hart verbally agreed that, if the lumber company would keep on furnishing the fuel to run the institution, he would see that they were paid, or that they did not lose anything." About the time the foreclosure proceedings began, Hart told the lumber company to proceed to collect its claim against the electric company, to avoid loss by reason of his promise or guaranty. This was upon demand of payment made by the lumber company upon him. There is reason to believe from the evidence that Mr. Hart will pay according to his promise, if the amount is not collected from the electric company. It is claimed that the action was brought for the benefit of Hart, and that, as between him and the bondholders, equity requires that Hart should pay the debt, especially as the record of the trust deed was deferred until April 4, 1893, by Hart himself.

We cannot agree with counsel for the appellant that the record of a mortgage of real estate in the office of the register of deeds is notice to the world of the mortgage of chattels included in the same instrument, as it is not the place provided by law for obtaining such notice, and it cannot be supposed that interested parties will look there

for such mortgages. "A record is not notice for any purpose not declared by statute." *Burton v. Martz,* 38 Mich. 762. We think, however, that the term "apparatus" in the mortgage is broad enough to include the lamps, and to that extent it was good as a mortgage of chattels; but, not being filed, it was void under the statute, as against the claim of the execution creditor, who is not shown to have known of its existence when credit is given. See *Watson v. Mead,* 98 Mich. 330, and cases cited. The evidence is clear that payments were regularly applied upon the earlier purchases of fuel.

The evidence shows that Hart made an oral promise in the nature of a guaranty. If this promise was intended to apply to subsequent transactions, it was still within the statute of frauds. He has not performed it, and if he should choose to make that defense to an action it would certainly be good. In his testimony he intimates that he will keep his promise. But this does not strengthen the promise any. It is still an oral promise to answer for the debt of another. Should the petitioner be defeated in this proceeding, and the lumber company should bring its action against Hart, certain defeat would follow if Hart should see fit to defend and the case should depend upon the evidence given in this record. The result would be that the company would, to use a homely expression, "fall between two stools." It is urged that credit was given to Hart, instead of the electric light company, and that, therefore, the promise was not within the statute; but we think that the evidence shows otherwise. In this view of the case it is manifest that Hart's alleged delay in recording and filing the deed of trust cuts no figure, for the lumber company is in no way chargeable with complicity.

The order of the circuit court in chancery will be affirmed, with costs.

The other Justices concurred.